UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
GERARDO SANCHEZ,

                                Plaintiff,

              - against -                      **OPINION & ORDER**

BLUSTEIN, SHAPIRO, RICH & BARONE LLP, GARDINER    No. 13-CV-8886 (CS)
BARONE, MARCELLO CIRIGLIANO, DANIELLE BARAN,
JOHN/JANE DOES, 1-10,

                                Defendants.
-------------------------------------------------------------------------x

Appearances:
Gerardo Sanchez
Astoria, New York
*Plaintiff* Pro Se

Gardiner S. Barone, Esq.
Blustein, Shapiro, Rich & Barone, LLP
Goshen, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' Motion to Dismiss.  (Doc. 13.)  For the reasons set forth below, Defendants' Motion is GRANTED.

**I.  BACKGROUND**

      This case revolves around the conduct of a state court action begun in April 2010, *Washington Park Condo. v. Foundry Dev. Co., et al.*, No. 4484/2010 (N.Y. Sup. Ct., Orange Cnty.) ("*Washington Park*"), in which Plaintiff was a defendant.  Defendants are the second law firm that represented the *Washington Park* plaintiff, as well as a partner and two employees of that law firm.  Plaintiff asserts several state and federal claims against Defendants arising from: 1) a lien filed by the *Washington Park* plaintiff's original counsel against property owned by a

1

limited liability company ("LLC") of which Plaintiff is a member; and 2) Defendants' submission of a process server's affidavit of service (which was sworn to and originally filed in May 2010) in conjunction with its opposition (in May 2013) to Plaintiff's motion to dismiss the state court case for insufficient service of process.

This is not the only federal action that Plaintiff has filed related to the process server's allegedly false affidavit and other attorney conduct in *Washington Park*. On August 9, 2010, Plaintiff filed a case in the Eastern District of New York, (No. 10-CV-3641 (E.D.N.Y.) ("*Sanchez I*")), asserting claims against the *Washington Park* plaintiff's original counsel and "any party that was in any way involved with service of process in the state court action, whether by filing the suit, hiring the process server, filling out an affidavit of service, or notarizing and filing that affidavit." (*Id.*, Doc. 69 ("*Sanchez I* MTD Order"), at 4.)[1] The claims in *Sanchez I* are virtually identical to those Plaintiff asserts in this case, except that the claims here relate to the submission (by the *Washington Park* plaintiff's second counsel) of the affidavit of service in opposing a motion to dismiss, while the claims in *Sanchez I* relate to the submission (by the *Washington Park* plaintiff's original counsel) of the same affidavit at the beginning of the case. Following motions to dismiss and for summary judgment, all of the claims in *Sanchez I* were dismissed against all defendants who appeared, (*see id.*, Docs. 69, 122, 148),[2] and the case was closed on September 30, 2014, (*see id.*, Doc. 148).

The facts below are drawn from both the Amended Complaint ("AC"), (Doc. 12), and filings in *Washington Park* and *Sanchez I*. For purposes of the instant Motion, I accept as true the facts, but not the conclusions, as set forth in the Amended Complaint, and because Plaintiff is

---

[1] All unpublished opinions cited herein will be sent to Plaintiff.

[2] A default judgment in the amount of $1,422.50 was entered against the process server and the process service agency for failure to defend the action. (*See id.*, Doc. 148.)

*pro se*, I will "interpret the factual allegations of [his] complaint to raise the strongest arguments that they suggest." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted). I take judicial notice of the statements made in the other court proceedings, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). I set forth only those facts relevant to this decision.

    **A.**  *<u>Washington Park</u>*

    Judge Amon accurately summarized the *Washington Park* complaint as follows:

> [T]he Board of Managers of the Foundry at Washington Park Condominium ("the Board"), located in Newburgh, NY . . . commenced an action in the Supreme Court in Orange County, NY on April 27, 2010, alleging against Nirva and Gerardo Sanchez, among others, claims sounding in breach of fiduciary duty, breach of contract, fraudulent conveyance, unjust enrichment, and quantum meruit. According to the state court complaint, the Sanchezes (along with other individuals and entities under their collective control) owned title to a majority of the units in the condominium, which in turn gave them control of the Board. They allegedly used this control (1) to avoid paying common charges for the units to which they owned title, in contravention of the condominium's bylaws, (2) to amend the bylaws to excuse payment of common charges, (3) to approve certain borrowing, and (4) to convey title to certain units to another entity under their control for no consideration. The Board sought damages arising directly from these allegations.

(*Sanchez I* MTD Order 3 (citations omitted).) Plaintiff and his wife were not alleged to reside in the condominium complex at issue in *Washington Park*. Rather, the *Washington Park* complaint avers that Plaintiff resides in Astoria, New York and is a principal in corporate entities that invested in the condominium complex. (*See* Barone Decl. Ex. 1 ("*Washington Park* Complaint"), at ¶ 10.)[3]

---

[3] "Barone Decl." refers to Declaration of Gardiner S. Barone, Esq. (Doc. 14.) I disregard arguments or factual averments in this declaration insofar as the Motion is made under Fed. R. Civ. P. 12(b)(6). *See Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000).

3

On June 25, 2010 – about two months after the *Washington Park* Complaint was filed – Plaintiff and his wife, appearing *pro se*, filed motions to dismiss it for improper service, arguing that they had not been served, and only "learned of the existence of the Complaint when two of the other defendants (Foundry Development Co., Inc., and Polonia Ventures, LLC), where [*sic*] served by mail by the Secretary of State, at a different address." (*Sanchez I*, Doc. 55, Ex. G.) These motions, along with others Plaintiff filed, led to protracted litigation and a series of decisions. Relevant here, on November 25, 2011, the trial court permitted the Board to amend the complaint and serve Plaintiff by overnight mail, (*see* Barone Decl. Ex. 2), and the Board appears to have complied with that order, (*see id.* Ex. 3). Also on November 25, 2011, the trial court denied Mrs. Sanchez's motion to dismiss for insufficient service, (*see id.* Ex. 7), but did not issue an order addressing Plaintiff's motion to dismiss for insufficient service. On March 25, 2012, Plaintiff and Mrs. Sanchez appealed several rulings, including the order "denying dismissal for lack of jurisdiction due to sewer service granting improper leave to serve complaint (amended)." (*Id.* Ex. 5.) On November 20, 2013, the Appellate Division denied that portion of the appeal, noting that Mrs. Sanchez's "conclusory and unsubstantiated denial of service lacked the factual specificity and detail required to rebut the prima facie proof of proper service set forth in the process server's affidavit of service." (*Id.* Ex. 8.)

Despite the November 2011 order permitting the Board to file an amended complaint and serve it by overnight mail, the trial court scheduled a traverse hearing for May 10, 2013 to determine whether Plaintiff was properly served with the original complaint. (AC ¶ 48; *id.* Ex. 4.)[4] The process server did not, however, show up for this hearing, (*id.* ¶ 49), and the transcript reveals that much of the hearing was rather ironically dedicated to determining whether

---

[4] At some point prior to May 10, 2013, the judge who entered the November 2011 order permitting re-service retired and a different judge presided over the remainder of the *Washington Park* proceedings. *Compare* Barone Decl. Ex. 2 (order signed by Justice McGuirk), *with id.* Ex. 23 (hearing presided over by Justice Marx).

Defendants used due diligence to serve the process server with a subpoena for the traverse hearing, (*see* Barone Decl. Ex. 23, at 4-21). At the May 10, 2013 hearing, the court permitted the Board to move to re-serve Plaintiff with the amended complaint. (*See id.* at 26.) On August 23, 2013, the court granted the Board's motion, thus obviating the need for a traverse hearing. (*See id*. Ex. 14.)[5] Plaintiff then filed a petition for a writ of mandamus to compel the *Washington Park* trial court to complete a traverse hearing, which the Appellate Division denied because Plaintiff "failed to demonstrate a clear legal right to the relief sought." (*Id.* Ex. 10.)

On February 4, 2014, the Board and Plaintiff settled. (*See id.* Ex. 19.)

### B. Plaintiff's Claims

As in *Sanchez I*, Plaintiff alleges that the process server who claimed to have served the original *Washington Park* complaint lied in his May 2010 affidavit. (*See* AC ¶¶ 29, 30A-H.) Unlike *Sanchez I*, this case involves the Board's second law firm and people associated with that law firm as defendants, (*see id.* ¶¶ 12-14), and thus does not pertain to the filing of the process server's affidavit in May 2010. Rather, Plaintiff alleges that the filing of the affidavit in conjunction with the aborted traverse hearing in May 2013, (*see id.* ¶¶ 21, 31), violated several provisions of state and federal law, (*see id.* ¶ 2).

Plaintiff also asserts that Defendants' "refus[al] to remove a false lien" prepared by the Board's original counsel and placed on condominium units for unpaid common charges violated his due process rights. (*Id.* ¶¶ 47b, 85; *see Washington Park* Complaint Ex. C.) The lien was issued against Polonia Ventures LLC and Paul & Joseph Management Inc., (*see Washington*

---

[5] In issuing this order, the court found a reasonable excuse for the delay in service, because the Board "relied, as it had every right to do, upon a licensed process server to effectuate service upon Defendant." (*Id.* at 4.) The court also found that the Board had a potentially meritorious claim. (*Id.* at 5.)

*Park* Complaint Ex. C), the companies that owned the units, (P's Opp. 21).[6] "Plaintiff is one of the owners of [Polonia Ventures] and the managing partner." (*Id.*) Plaintiff does not allege that he has any stake in Paul & Joseph Management.

Plaintiff filed this action on December 16, 2013. (Doc. 1.)[7] Plaintiff asserts a claim under 42 U.S.C. § 1983 for violation of his due process rights and his rights under 18 U.S.C. §§ 2 and 242; a Fair Debt Collection Practices Act ("FDCPA") claim; and state law claims for fraud, intentional infliction of emotional distress, abuse of process, and violations of N.Y. Gen. Bus. Law § 349 and N.Y. Jud. Law § 487. (*See* AC ¶¶ 2, 84-119.) On March 24, 2014, Defendants moved to dismiss all of Plaintiff's claims. (Doc. 13.)[8]

## II. DISCUSSION

### A. Legal Standards[9]

#### 1. Fed. R. Civ. P. 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009). "Determining the

---

[6] "P's Opp." refers to Verified Reply/Affidavit in Opposition to Defendants' Motion to Dismiss. (Doc. 17.) The Court may "consider affidavits and other materials outside of a pro se plaintiff's complaint when deciding a motion to dismiss, to the extent these materials are consistent with the allegations in the complaint." *Cornado v. City of N.Y.*, No. 11-CV-5188, 2014 WL 4746137, at *2 (S.D.N.Y. Sept. 24, 2014).

[7] Ironically, Defendants aver, and Plaintiff has not disputed, that they were not properly served with the summons and complaint. (*See* Barone Decl. ¶¶ 101-03.) Because Defendants have actual notice of these proceedings, and in light of the preference for resolving disputes on the merits, I do not dismiss on that basis.

[8] In his opposition, Plaintiff argued that Defendants' attorney (who is himself a defendant) demonstrated that he "lacks candor with the Court," because he originally filed a notice of appearance on behalf of three of the four defendants, and only later filed a notice of appearance on behalf of all Defendants. (P's Opp. 4 n.3.) Plaintiff thus argued that he is entitled "to file a cross-motion to the motion to dismiss." (*Id.*) I previously rejected this argument and will not discuss it further. (*See* Doc. 22.)

[9] In their papers, Defendants consistently mis-cite their motion to dismiss as a "Rule 15" motion. (*See, e.g.*, Defendants' Memorandum of Law in Support of Motion to Dismiss ("Ds' Mem."), Doc. 15, at 5-7.) Fed. R. Civ. P. 15 pertains to amendment of pleadings. Fed. R. Civ. P. 12 pertains to motions to dismiss pleadings.

existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* (internal quotation marks and citations omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds,* 561 U.S. 247 (2010).  Standing challenges are properly brought under Fed. R. Civ. P. 12(b)(1). *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006); *see Rajamin v. Deutsch Bank Nat'l Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014) ("The plaintiff bears the burden of establishing . . . standing.").

        2. <u>Fed. R. Civ. P. 12(b)(6)</u>

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

7

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

B. **Plaintiff's Federal Claims**

1. 42 U.S.C. § 1983

To state a claim under Section 1983, Plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed by the Constitution or federal law. 42 U.S.C. § 1983; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).[10] Here, Plaintiff claims that Defendants' filing of the process server's affidavit in conjunction with the aborted traverse

---

[10] Defendants make no argument as to the under color of law element, and I thus do not address whether Defendants acted under color of law when they filed the process server's affidavit. *See United States v. Wiseman*, 445 F.2d 792, 796 (2d Cir. 1971) (holding, in prosecution of process servers who executed false affidavits of service, that service of process constituted action under color of law and noting that "it is significant that this case involves defendants' mode of [serving process], and does not involve a collateral aspect of the process serving business").

hearing and "refusal to remove a false lien" violated his rights under the Due Process Clause and 18 U.S.C. §§ 2(b) and 242.  (AC ¶¶ 47b, 89.)

Plaintiff's allegations do not plausibly state a violation of his due process rights. Regarding the process server's affidavit, Plaintiff claims that Defendants violated his due process rights by "negating [his] opportunity to have a Traverse Hearing and dismissal of complaint due to the statute of limitations."  (*Id.* ¶ 11 n.1.)  Plaintiff is incorrect.  As the Appellate Division ruled, Plaintiff does not have a right to a traverse hearing.  (*See* Barone Decl. Ex. 10.)  Because the judge had discretion under N.Y. C.P.L.R. §§ 306-b and 2004 to allow the state-court plaintiff to re-serve even if the original service was defective, Plaintiff had no entitlement to a traverse hearing such that deprivation of it could support a due process claim.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").  Even if Plaintiff did have a right to a traverse hearing, Defendants' re-filing of the process server's affidavit could not have plausibly caused the judge to cancel that hearing.  Rather, the hearing transcript and order permitting re-service make clear that the judge canceled the traverse hearing and then permitted re-service without a traverse hearing in the interest of judicial efficiency – *i.e.*, having a traverse hearing was unnecessary because the court found good cause for permitting re-service, (*see* Barone Decl. Exs. 14, 23) – which did not depend on whether or not Defendants re-filed the affidavit of service.  Moreover, Plaintiff does not even allege that Defendants argued that the affidavit of service was valid.  Rather, the Amended Complaint merely asserts that Defendants "uttered" and "filed" the affidavit.  (*See* AC ¶ 6.)  The re-filing thus does not seem to have had any conceivable, let alone plausible, effect on the outcome in the state court.

9

More fundamentally, assuming (as I must) that the process server's affidavit is in fact false, it did not result in any deprivation because Plaintiff does not deny having prompt actual notice of the state-court litigation. *See Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) ("If a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended."). Indeed, he filed a motion to dismiss it soon after it was filed. (*See Sanchez I*, Doc. 55, Ex. G.) And no default or other deprivation resulted from the allegedly fraudulent affidavit – either when originally filed, (*see Sanchez I* MTD Order 14-15), or when filed again in conjunction with the 2013 motion to dismiss. Further, although Plaintiff is unhappy with the outcome, his claims regarding improper service were heard in the state court – in other words, he received the process he was due. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 88 (2d Cir. 2000) ("[D]ue process guarantees a fair *hearing*, *not* a legally correct *outcome*.") (emphasis in original).

Regarding the lien, Plaintiff does not allege that he owns the condominium units that were subject to the lien. Instead, an LLC in which Plaintiff has an ownership interest, Polonia Ventures, owns those units. Because a "member [of an LLC] has no interest in specific property of the [LLC]," N.Y. Ltd. Liab. Co. Law § 601, and any injury to Plaintiff is thus indirect – *i.e.* "derivative of an injury to a third party," *Excimer Assocs. v. LCA Vision, Inc.*, 292 F.3d 134, 140 (2d Cir. 2002) – Plaintiff does not have standing in his individual capacity to file a suit based on injuries he sustained from a decrease in the value of Polonia Venture's property resulting from the lien, *see* (P's Opp. 21-22 ("PV's [Polonia Venture's] value and credit was affected by the invalid lien. As Managing Partner, Plaintiff is now responsible for the loss to the other partners.")); *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 648 (S.D.N.Y. 2008) (member of LLC "can only derivatively raise claims alleging misappropriation or destruction of assets owned by

10

[LLC] as he holds no property right in the assets of [LLC]"); *Weber v. King*, 110 F. Supp. 2d 124, 130 (E.D.N.Y. 2000) ("Plaintiffs [members of LLC] have no property interest in the assets of the [LLC], but only a right to share in its profits. If the [LLC's] assets are threatened by the Additional Defendants' picketing, only the [LLC] has standing to challenge such a threat."); *Sealy v. Clifton, LLC*, 890 N.Y.S.2d 598, 600 (App. Div. 2009) ("Since the properties in question are owned by [the LLC], the plaintiff [50% owner of LLC] cannot maintain a cause of action [regarding property owned by LLC] in his individual capacity."); *see also Bingham v. Zolt*, 66 F.3d 553, 561-62 (2d Cir. 1995) ("When the claim is that corporate property has been removed from the corporation, it is the corporation – having an independent legal identity – that must seek on its own or derivatively, to redress its injury. The shareholder in such a case is injured only as a result of the injury to another, *i.e.*, the corporation, and therefore generally lacks standing.").[11] Accordingly, Plaintiff does not have standing in his individual capacity to assert a due process claim based on the lien.[12]

Even if Plaintiff did have standing, and assuming the lien was illegal, Plaintiff makes no allegation regarding the process he was afforded to challenge the lien, and thus fails to state a due process violation. *See Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146,

---

[11] Plaintiff argues that he has standing because Polonia Ventures "is a special kind of LLC classified, for IRS tax purposes as a partnership (and not as a corporation) that passes through all income and losses." (P's Opp. 21.) Assuming that Plaintiff is referring to a subchapter S corporation, he still lacks standing to assert this claim in his individual capacity. *See In re AFY*, 734 F.3d 810, 820 (8th Cir. 2013) ("While an S corporation is treated differently for taxation purposes, it remains a corporation in all other ways, and it and its shareholders are separate entities who generally do not have standing to sue on the corporation's behalf.") (internal quotation marks omitted); *Jin Fu Zhong v. Sweeny*, No. 08-CV-2204, 2011 WL 1193011, at *9 (E.D. Pa. Mar. 29, 2011) (sole shareholder of S corporation lacked standing to maintain action in his own right when injury inflicted on corporation and only injury to plaintiff is indirect harm of diminution in value of shares). Plaintiff concedes that his injury is derivative of the LLC's injury, (*see* P's Opp. 21-22 ("PV's [Polonia Venture's] value and credit was affected by the invalid lien. As Managing Partner, Plaintiff is now responsible for the loss to the other partners.")), and his statements in the state court indicate his belief that only Polonia Ventures, not Plaintiff in his personal capacity, could be sued for unpaid common charges, (*see* Barone Decl. Ex. 19, at 51-52).

[12] Based on prior litigation in this district, Plaintiff should have been fully aware that he does not have standing, in his individual capacity, to assert this claim. *See Sanchez v. Walentin*, No. 10-CV-7815, 2012 WL 336159, at *1-2 (S.D.N.Y. Jan. 31, 2012), *aff'd* 526 F. App'x 49 (2d Cir. 2013) (summary order).

151 (2d Cir. 2010) ("While appellants may have adequately alleged that liens invalid under state law were imposed on their properties, that allegation does not suffice to state a claim under Section 1983 for relief based on a procedural due process violation.").

Finally, as Plaintiff should well know from the *Sanchez I* MTD Order, 18 U.S.C. §§ 2 and 242 are criminal statutes that neither provide a right the deprivation of which can support a claim under Section 1983, *see Woodard v. Hardenfelder*, 845 F. Supp. 960, 961 n.1 (E.D.N.Y. 1994), nor create a freestanding private right of action for their violation, *Sanchez I* MTD Order 11 (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 190-91 (1994) and *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)).

Accordingly, Plaintiff's Section 1983 claim is dismissed.[13]

2. FDCPA

Plaintiff alleges that Defendants violated the FDCPA by 1) "[p]roducing and filing a fraudulent affidavit of service that falsely claims that Plaintiff was served with a summons and complaint when in fact he was not," and 2) "[p]roducing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not." (AC ¶ 41.) Defendants contend, among other things, that the fees at issue in the state court case do not constitute "debt" under the FDCPA. (*See* Ds' Mem. 12-14.)[14]

---

[13] Defendants' argument that *Younger* abstention applies is incorrect because the state court case was settled and there do not appear to be any ongoing state proceedings that would require abstention. *See Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir. 1995) (*Younger* abstention appropriate where, among other things, "there is an ongoing state proceeding"). Because Plaintiff's federal claims clearly fail on the merits, I will not reach Defendants' assertions that *Rooker-Feldman* bars Plaintiff's claims, *see Whelan v. Pascale*, No. 13-CV-6998, 2014 WL 4638851, at *4 n.3 (E.D.N.Y. Sept. 16, 2014) ("Court may bypass *Rooker-Feldman* in order to reach the merits of a dispute."), and that Plaintiff's Section 1983 claim is barred by collateral estoppel, (*see* Ds' Mem. 22-23).

[14] Defendants also contend that Plaintiff's FDCPA claim is barred by collateral estoppel because the state court held that Plaintiff's wife was properly served, which implies that Plaintiff was properly served, which would defeat the "false, deceptive, or misleading representation" element of Plaintiff's FDCPA claim. (*See id.* at 23.) It does not seem to me that the state court necessarily decided that Plaintiff was properly served and, given the disposition below, I need not reach this issue. (*See* P's Opp. 7.) I further note that in *Sanchez I*, Judge Amon did not adopt the

12

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The statute defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5); *see Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) (definition "limits 'debt' to consumer debt, *i.e.*, debts 'arising out of . . . transaction[s]' that 'are primarily for personal, family, or household purposes'") (quoting 15 U.S.C. § 1692a(5)).  Thus, "actions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006).  Stating that a particular obligation is a "debt" under the FDCPA is a legal conclusion, *see Anderson v. Granoff, Walker & Forlenza, P.C.*, No. 11-CV-4178, 2012 WL 1066801, at *2 (S.D.N.Y. Mar. 27, 2012), so if a complaint does not plead facts that could plausibly lead to the inference that the debt attempted to be collected was a consumer debt, the complaint fails to state a FDCPA claim and must be dismissed, *see Spira v. J.P. Morgan Chase*, No. 09-CV-8412, 2010 WL 3910290, at *1, 4 (S.D.N.Y. Sept. 29, 2010) (dismissing FDCPA claim on Fed. R. Civ. P. 12(b)(6) motion where facts did not plausibly plead debt was consumer debt), *aff'd* 466 F. App'x 20 (2d Cir. 2012).

Here, Plaintiff has not pleaded facts sufficient to show that the common charges at issue in *Washington Park* constituted consumer debt.  Indeed, Plaintiff pleads no facts regarding the nature of the debt, which alone would require dismissal for failure to state a FDCPA claim.  *See id.*  But here it is also obvious that the debt was *not* consumer debt.  Rather, based on the pleadings and documents submitted in *Washington Park*, it is apparent that the common charges

---

portion of Magistrate Judge Bloom's Report & Recommendation finding that the state court decision estopped Plaintiff from claiming that the process server lied in the affidavit of service.  (*See Sanchez I*, Doc. 122, at 4.)

at issue were business expenses accrued by corporate entities that Plaintiff used as investment vehicles. *See Sanchez I* MTD Order 17 ("[T]he state court complaint reveals that the underlying dispute in state court has nothing to do with a consumer transaction. Rather, it concerns the payment of common charges to the condominium units, as well as damages for the breaches of the Sanchezes' duties as fiduciaries to the condominium."). Because such business expenses do not constitute consumer debt, *Washington Park* and the filings therein are not "in connection with the collection of any debt" covered by the FDCPA, and thus cannot form the basis of a FDCPA claim. *See Anderson*, 2012 WL 1066801, at *4 (loan used to pay mortgage on taxi was for business purposes, not consumer debt under FDCPA); *Spira*, 2010 WL 3910290, at *1, 4 (promissory note to limited partnership used as collateral for a loan agreement not consumer debt under FDCPA); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartel*, 741 F. Supp. 1139, 1139-40 (S.D.N.Y. 1990) (promissory notes used to pay for partnership interest in "tax-shelter limited partnership which was formed to purchase and operate hotels and motels" not debt under FDCPA).

Accordingly, Plaintiff's FDCPA claim is dismissed.

### C. <u>Plaintiff's State Law Claims</u>

After disposing of the federal claims, there are no federal causes of action left to try. The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."). I have

considered the *Cohill* factors, and conclude that this is the "usual case" in which they "point towards declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.  Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

### D. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

On January 9, 2014, this Court held a pre-motion conference at which Defendants identified many of the deficiencies in the original complaint.  (*See* Minute Entry 1/9/2014; Doc. 7.)  On February 24, 2014, Plaintiff filed the Amended Complaint.  (*See* Doc. 12.)  Plaintiff's failure to fix deficiencies in his previous pleadings, after being provided notice of the deficiencies, is alone sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended

complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). Further, Plaintiff has not requested leave to file a Second Amended Complaint or suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."). Indeed, the problem with the Amended Complaint is substantive, and better pleading would not lead to a different result. *See Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where problem with complaint is substantive and better pleading would not cure it). I therefore decline to grant Plaintiff leave to amend *sua sponte*.

### III.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. The federal claims are dismissed with prejudice and the state claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 13), and close the case.

**SO ORDERED.**

Dated: December 23, 2014
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.